## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IRENE A. GREAUX,               ) | |
|                                )                | |
|     **Plaintiff,**             ) | |
|          v.                    ) | |
|                                )                | Civil Action No. 2014-0060 |
| DUENSING, CASNER, DOLLISON &   ) | |
| FITZSIMMONS; DUENSING, CASNER AND ) | |
| FITZSIMMONS; MATTHEW DUENSING, ) | |
|                                )                | |
|     **Defendants.**            ) | |
| _____ ) | |

**Attorneys:**
**Rhea Lawrence, Esq.,**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Charles E. Engeman, Esq.,**
**Bailey A. Calhoun, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff's "Notice of Objection and Appeal of Magistrate's Order [ECF Doc. 25] Granting Defendants' Motion to Stay Proceedings" (Dkt. No. 26). As discussed further below, the Court finds that Plaintiff failed to timely object to the Magistrate Judge's Order and, in any event, the Magistrate Judge's conclusion that Plaintiff's claims are within the scope of the parties' arbitration agreement is not clearly erroneous or contrary to law. Each finding provides an independent basis to deny Plaintiff's appeal, and therefore the appeal will be denied.

## I. BACKGROUND

On June 12, 2014, Plaintiff filed a Complaint against the law firm of Duensing, Casner, Dollison & Fitzsimmons; its successor in interest Duensing, Casner and Fitzsimmons; and Matthew Duensing, individually, (collectively "Defendants"). (Dkt. No. 1). Plaintiff alleges that while employed by Defendants "she was subject to sexual harassment, hostile work environment and retaliation" and that she was forced into "a *quid pro quo* sexual relationship with Matthew Duensing, her supervisor and partner at Defendant Duensing, Casner, Dollison & Fitzsimons." (Dkt. No. 26 at 2). Plaintiff alleges five separate claims: sexual harassment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 and Title 10 and 24 of the Virgin Islands Code; wrongful discharge in violation of 24 V.I.C. §§ 76 *et seq.*; intentional infliction of emotional distress; and retaliation. (Dkt. No. 1 at ¶¶ 62-76).[1] In lieu of an Answer, Defendants filed a Motion to Stay Proceedings Pending Arbitration (Dkt. No. 7) asserting that the employment contract between Defendants and Plaintiff renders Plaintiff's claims subject to arbitration.

After the Motion to Stay was fully briefed, the Magistrate Judge entered an Order on September 30, 2014 granting Defendants' Motion to Stay (the "Magistrate Order"). (Dkt. No. 25). The Magistrate Order reasoned that all of Plaintiff's claims fell within the scope of the arbitration provision in the June 15, 2010, employment agreement (the "Employment Agreement"). (*Id.* at 4). On October 17, 2014, Plaintiff filed the instant Notice of Objection. (Dkt. No. 26). Defendants subsequently filed their "Opposition to Plaintiff's Objection to and Appeal from Magistrate Judge's Order Granting Stay Pending Arbitration." (Dkt. No. 27).

---

[1] Plaintiff cites no particular statute regarding its standalone claim for retaliation.

## II.   DISCUSSION

### A.   Timeliness of Plaintiff's Objection to the Magistrate Order

#### 1.   Applicable Legal Standards

Federal Rule of Civil Procedure 72(a) provides, in pertinent part:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order *within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to*. The district judge in the case *must consider timely objections* and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a) (emphasis added).

Parties wishing to object to a magistrate judge's order compelling arbitration are subject to the fourteen-day time limit set forth in Rule 72(a). *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014); *see also Schmidt v. Mars, Inc.*, CIV.A. 09-3008, 2011 WL 2421241, at *3 (D.N.J. June 13, 2011) (finding that appeal that came four months after magistrate judge's order was untimely); *Bolger Publ'ns, Inc. v. Graphic Commc'ns Intern. Union Local 229, AFL-CIO, CLC*, 601 F. Supp. 207, 208 (D. Minn. 1985) (finding that appeal filed four days after time period established in Rule 72 was untimely); 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 3069 (2d ed. 2011) ("Should a party fail to make timely objections, it has no right to review by the district judge of the action taken by the magistrate judge."). However, failing to timely appeal a magistrate order is not an absolute bar to review. *See Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 n.9 (3d Cir. 1998), (noting that the language of Rule 72(a) does not bar review by the Court of Appeals of an untimely appeal from a magistrate judge's order "when exceptional circumstances exist.").

### 2. Analysis

The Magistrate Order was issued on September 30, 2014, and Plaintiff filed her appeal on October 17, 2014. Thus, Plaintiff filed her appeal seventeen days after the Magistrate Order was issued. (*See* Dkt. No. 25; Dkt No. 26). Because Rule 72(a) requires that an appeal be filed within fourteen days of a magistrate judge's order, Plaintiff's appeal is three days late. *Virgin Islands Water & Power Auth.*, 561 Fed. App'x. at 134 ("Given that the motion to compel arbitration was properly before the Magistrate Judge, [defendant] was obligated to seek review of that order in the District Court within fourteen days of its issuance."). Plaintiff does not acknowledge that her appeal is untimely, offer any excuse for its untimeliness, or present any facts which would support a finding that exceptional circumstances exist. Accordingly, denial of Plaintiff's Notice of Objection is warranted on grounds of untimeliness.

### B. Scope of the Parties' Arbitration Agreement

Even if the Court were to allow Plaintiff's untimely Notice of Objection, the Court finds that the Magistrate Judge's determination that Plaintiff's claims fall within the scope of the arbitration provision is not clearly erroneous or contrary to law.

### 1. Applicable Legal Standards

The Federal Arbitration Act ("FAA") provides that where a valid arbitration agreement exists, trial courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," provided that the court is "satisfied that the issue involved . . . is referable to arbitration" under the parties' agreement. 9 U.S.C. § 3. Arbitration is a "matter of contract" where "litigants may freely contract to refer their dispute to arbitration." *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013); *Gov't of the V.I. v. 0.459 Acres of Land Consisting of the Following: Parcel No. 6A Estate Thomas Kings Quarter & Parcel No. 9A, Estate Thomas, V.I.,* 286 F. Supp. 2d 501, 511 (D.V.I.

2003). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)) (emphasis in original).

To determine arbitrability, courts analyze two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with the language of the arbitration agreement?" *Id.* (quoting *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir. 1998)) (quotations omitted). There is a presumption of arbitrability in that courts "must resolve any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)) (quotations omitted). However, this presumption of arbitrability "applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls." *Id.* at 173.

"A district judge may only set aside an order of a magistrate concerning a nondispositive matter where the order has been shown to be clearly erroneous or contrary to law." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 (3d Cir. 2009) (quoting *Snow Machines, Inc. v. Hedco, Inc.*, 838 F.2d 718, 727 (3d Cir. 1988)). "[A] reviewing court can upset a [magistrate's] finding of fact, even when supported by some evidence, but only if the court has the definite and firm conviction that a mistake has been committed." *Clarke v. Marriot Int'l, Inc.*, No. CIV 1:08-CV-00086, 2010 WL 1657340, at *2 (D.V.I. Apr. 23, 2010) (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)). "A magistrate's finding of law is 'contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law.'" *Id.* (quoting *Benjamin v. Esso Standard Oil Co.*, No. CIV. 2008-00101, 2009 WL 2606374, at *2 (D.V.I. Aug. 18, 2009)).

**2.     Analysis**

Plaintiff does not challenge the validity of the arbitration agreement. (*See generally* Dkt. No. 20; Dkt. No. 26).[2] Rather, Plaintiff asserts that the Magistrate Order should be reversed because her claims against Defendants fall outside the scope of the parties' arbitration agreement. (Dkt. No. 26 at 6). Accordingly, the Court examines whether the Magistrate Judge's determination regarding the scope of the agreement is clearly erroneous or contrary to law. *See Cardio Net, Inc.*, 751 F.3d at 172 ("Because neither party contests the validity of the Agreement, we confine ourselves to assessing whether the disputes at issue fall within the scope of the Agreement's arbitration clause.").

In her Complaint, Plaintiff asserts the following claims: sexual harassment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act and Title 10 and 24 of the Virgin Islands Code; wrongful discharge in violation of 24 V.I.C. §§ 76, *et seq.* (the Virgin Islands Wrongful Discharge Act); intentional infliction of emotional distress; and retaliation. (Dkt. No. 1 at ¶¶ 62-76). The key facts supporting each of these claims center on one of Plaintiff's supervisors allegedly forcing her into a "a *quid pro quo* sexual relationship" and Defendants' conduct toward Plaintiff after the relationship was uncovered. (*See* Dkt. No. 26 at 2).

Resolution of Plaintiff's appeal turns on whether her claims fall within the scope of the following arbitration provision contained in the parties' Employment Agreement:

> Any controversy or claim arising out of or relating to this agreement, or the breach of this contract, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment on the award rendered may be entered in any court having jurisdiction over the manner. EMPLOYEE and [EMPLOYER] agree that an EMPLOYEE's sole remedy for breach of this contract shall be in accordance with the terms of this contract.

---

[2] The Magistrate Order similarly notes that Plaintiff "does not contest the validity of the arbitration agreement" and goes on to conclude that "[u]pon its face, it is clear that the arbitration provision binds both parties, and the contract was signed by both parties. Consequently, the [Magistrate Judge] finds that the agreement to arbitrate is valid." (Dkt. No. 25 at 2-3).

6

(Dkt. No. 8, Exh. 2 at 2).

The Magistrate Judge determined that the phrase "this agreement" and "this contract" "refer to the Plaintiff's employment and her employment relationship with Defendants." (Dkt. No. 25 at 3). Specifically, the Magistrate Judge found that the arbitration provision contained "broad language" that "encompasses not only the terms of the contract of employment, but also anything relating to that employment." (*Id.*). Because the Magistrate Judge also found that "Plaintiff's claims 'arise out of' or 'relate' to her employment and employment relationship with Defendants," the Magistrate Judge concluded that each of Plaintiff's claims fell within the scope of the parties' arbitration agreement. (*Id.* 3-4).³

Plaintiff's sole argument in her Notice of Objection (as well as underlying her Opposition to the Motion to Stay) is that her claims fall outside the scope of the arbitration agreement. Plaintiff argues that the arbitration provision is subject to "only one reasonable interpretation"—that arbitration is required only for those disputes arising out of the express terms of the employment contract, *i.e.* "issues that would be encompassed in a breach of contract action." (Dkt. No. 20 at 5; Dkt. No. 26 at 6). Because the "factual underpinnings and claims in Plaintiff's Complaint . . . [are] all unrelated to any issues that would give rise to a breach of contract claim," Plaintiff asserts that the arbitration agreement does not encompass her claims. (Dkt. No. 20 at 5; Dkt. No. 26 at 6). Plaintiff further argues that the use of the word "this" in the arbitration provision "serves to limit the word 'agreement' to those issues directly addressed in the [employment] agreement." (Dkt. No. 26 at 5). Plaintiff concludes that because the Magistrate Order failed to give meaning to the

---

³ Although the Magistrate Judge noted the FAA's presumption of arbitrability, it appears that the Magistrate Judge did not find it necessary to apply the presumption as it found that it was "clear" that the arbitration provision covered the employment relationship and that it was "also clear" that Plaintiff's claims arise out of the employment relationship. (Dkt. No. 25 at 3).

7

use of the word "this," the finding that the phrase "this agreement" refers to Plaintiff's employment relationship with Defendants is "clearly erroneous." (*Id.* at 6).

In contrast, Defendants argue the Magistrate Judge's ruling is not clearly erroneous or contrary to law. Defendants reason that because "this agreement" references the Employment Agreement between Plaintiff and Defendants, "any claims stemming from [Plaintiff's] employment with [Defendants] . . . must be arbitrated under the Agreement." (Dkt. No. 27 at 6). Defendants base this interpretation on the phrase "*[a]ny* controversy or claim *arising out of or relating to* this agreement," and reason that "claims relating to [Plaintiff's] employment relationship with [Defendants] . . . necessarily relate to her employment contract, and therefore must be arbitrated." (*Id.* at 10 (emphasis in original)). Defendants assert that Plaintiff's reading of the Employment Agreement is also flawed because the language "specifically states that arbitration is required of all claims arising out of or relating to the employment contract '*or* the breach of this contract.'" (*Id.* (quoting the Employment Agreement) (emphasis in original)). Thus, Defendants argue that the arbitration provision specifically includes breach of contract claims, *in addition to* any claims arising out of or relating to the Employment Agreement. (*Id.*).

Based on an examination of the Employment Agreement and Plaintiff's claims, the Court finds that the Magistrate Order is not clearly erroneous or contrary to law. First, the Court finds no reversible error with the Magistrate Judge's determination that "Plaintiff's claims 'arise out of' or 'relate' to her employment and employment relationship with Defendants." (Dkt. No. 25 at 3). Indeed, the Court notes that Plaintiff never argues that her claims fall outside of her *employment relationship* with Defendants. Rather, Plaintiff relies on her argument that the scope of the arbitration provision covers only disputes regarding the express terms of the Employment Agreement, *i.e.* "issues that would be encompassed in a breach of contract action." (Dkt. No. 26

8

at 6). In any event, after examining the factual underpinnings of Plaintiff's claims, the Court finds that each claim is inextricably tied to the employment relationship between the parties. *Cardio Net, Inc.*, 751 F.3d at 173 ("In assessing whether a particular dispute falls within the scope of an arbitration clause, we 'focus [ ] on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.'" (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001))).[4]

Likewise, the Court finds that the Magistrate Judge's interpretation of the scope of the arbitration provision is not clearly erroneous or contrary to law. In particular, the Magistrate Judge's holding that the arbitration provision encompasses claims stemming from the employment relationship is supported by the language and explicit purpose of the Employment Agreement. The Employment Agreement is the root contract that formally establishes the employment relationship between Plaintiff and Defendant Duensing, Casner, & Fitzsimmons. (Dkt. No. 8, Exh. 2 at 1 ("This contract is made and entered into . . . for the purposes of setting forth the terms of the relationship between the parties.")). Among other things, the Employment Agreement indicates that it relates to the continuing responsibilities of Plaintiff as an employee: "[Employee] agree[s] to perform all duties commonly discharged by an EMPLOYEE in a similar position and such duties as may be required from time to time by the firm." (*Id.* at 2). Further, the Employment Agreement addresses each party's rights regarding termination under the Virgin Islands Wrongful Discharge Act: "Both

---

[4] Plaintiff's claim for intentional infliction of emotional distress (arguably the only claim that could arise independently of the parties' employment relationship) is inextricably tied to the employment relationship as the claim is based on Defendant Matthew Duensing allegedly using his position as Plaintiff's supervisor and firm partner to force Plaintiff into a sexual relationship. *See Richardson*, 2010 WL 1641154, at *12 (holding that plaintiff's intentional infliction of emotional distress claim fell within scope of employment agreement's arbitration provision because it "is inextricably intertwined with her discrimination and breach of contract claims, as it arises from Defendant's allegedly wrong treatment of Plaintiff during the course of her employment.").

parties expressly agree that this agreement shall modify and waive the terms of Title 24 V.I.C. Section 76(a) and that such statute shall not apply to the [Employer]/EMPLOYEE relationship set forth herein." (*Id.*).[5] Such provisions in the Employment Agreement clearly pertain to the employment relationship between the parties.

In addition, Plaintiff's argument that the Magistrate Judge's ruling is clearly erroneous is not supported by the plain language of the contract. Although—as Plaintiff argues—the phrases "this agreement" and "this contract" refer to the Employment Agreement, the language of the arbitration agreement is not limited to alleged breaches of the Employment Agreement but also covers "any controversy or claims arising out of or relating to" the Employment Agreement. Because the express purpose of the Employment Agreement is to "set[] forth the terms of the relationship between the parties" (*Id.* at 1), claims stemming from the parties' employment relationship "arise out of or relate to" the Employment Agreement. Thus, the Magistrate Judge's conclusion that the phrase "this agreement" and "this contract" "refer to the Plaintiff's employment and her employment relationship with Defendants" (Dkt. No. 25 at 3) is not clearly erroneous or contrary to law.[6]

As indicated in the Magistrate Judge's Order, other courts examining similar arbitration language have reached the same conclusion. For example, in *Gillespie v. Colonial Life & Acc. Ins. Co.*, No. CIV.A. 08-689, 2009 WL 890579 (W.D. Pa. Mar. 30, 2009), the court considered whether

---

[5] By referencing this provision, the Court does not express an opinion on the provision's legal effect, if any, regarding Plaintiff's statutory rights under the Virgin Islands Wrongful Discharge Act, 24 V.I.C. §§ 76, *et seq*.

[6] In addition to the fact that the arbitration provision covers claims arising out of the employment relationship, the Court notes that one of Plaintiff's claims expressly implicates a specific contractual provision of the Employment Agreement—the Wrongful Discharge claim. (*See supra* text accompanying n.5; Dkt. No. 8, Exh. 2 at 2).

an employee's sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964 fell within the following language in an employment agreement: "every claim, controversy or dispute arising out of or related to this agreement, or the breach thereof, which cannot be settled through negotiation shall be settled by binding arbitration." *Id.* at *8. In holding that the plaintiff's Title VII claim fell within the scope of the arbitration provision, the court reasoned: "the breadth of the language of the arbitration clause establishes that it was intended to apply to any claim, controversy or dispute related to [plaintiff's] business relationship with [defendant], and not merely to disputes relating to specific provision[s] of the Agreement or breach thereof." *Id.*; *see also Richardson v. Virgin Islands Port Auth.*, No. CIV.A. 2009-136, 2010 WL 1641154, at *12 (D.V.I. Apr. 21, 2010) (requiring plaintiff to arbitrate her employment discrimination and intentional infliction of emotional distress claims (among others) and noting that "[t]he breadth of the language of the arbitration clause—'any controversy, dispute or claim arising out of or relating to this Agreement, or its interpretation, application, implementation, breach or enforcement'—establishes that it was intended to apply to any claim, controversy or dispute related to [p]laintiff's employment relationship with [d]efendant and was not limited to disputes relating to a specific provision of the Agreement"); *Labib v. Younan*, 755 F. Supp. 125, 129 (D.N.J. 1991) (holding that an arbitration provision stating that "[a]ny controversies or disagreements arising out of, or relating to this Agreement or breach thereof, shall be settled by arbitration" encompassed the employee's claims for breach of oral agreements (among others) and noting that "the employment agreement was drafted to govern the employment relationship and the termination of that relationship").

Thus, the Magistrate Judge's conclusion that the arbitration provision encompasses claims stemming from the employment relationship is amply supported by the language and import of the

11

Employment Agreement. Accordingly, the Court finds that this conclusion is not clearly erroneous or contrary to law.

### III. CONCLUSION

Plaintiff failed to appeal the Magistrate Order within the fourteen-day timeframe and, therefore, her appeal is untimely. Even if the Court were to accept Plaintiff's untimely filing, the Magistrate Judge's Order that the Employment Agreement's arbitration provision encompasses Plaintiff's claims is not clearly erroneous or contrary to law. For each of the foregoing reasons, the Court will deny the appeal.

An appropriate Order accompanies this Memorandum Opinion.

Date: April 29, 2016 _____/s/_____
WILMA A. LEWIS
Chief Judge